UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| ACADEMY OF MOTION PICTURE ARTS AND SCIENCES, a California nonprofit corporation, | ) ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION FILE |
| v. | ) ) | NO. _____ |
| THEEVENTLINE.COM, INC, an Illinois corporation, and ROBERT L. HOLLINGSWORTH, an individual, | ) ) ) ) | |
| Defendants | ) ) | |

## COMPLAINT

Plaintiff, the Academy of Motion Picture Arts and Sciences (the "Academy"), hereby files this Complaint against Defendants TheEventLine.com, Inc. ("TEL"), an Illinois corporation, and Robert Hollingsworth, an individual (collectively "Defendants"), and in support thereof respectfully shows the Court as follows:

## NATURE OF THE ACTION

1.

The Academy is a non-profit corporation that annually hosts its world-famous "Academy Awards®" at which it presents "©Oscar®" statues each year to

KH190025.DOC 9

honor achievements in motion picture-making.  Defendants are marketing and renting unlawful replicas of the Academy's copyrighted "©Oscar®" statue and infringing the Academy's "©Oscar®" marks.  After the Academy repeatedly asked Defendants to cease and desist, Defendants continue to rent, sell, and/or use the unlawful replicas.

2.

Defendants' actions constitute deliberate, willful, and unlawful infringement of the Academy's intellectual property rights.  The Academy therefore seeks (i) injunctive relief to restrain Defendants from continuing to distribute, advertise, manufacture, sell, and/or rent statues that are identical to, or substantially or strikingly similar to the Academy's "©Oscar®" statue; (ii) the impoundment and destruction of all such statues in Defendants' possession, custody, or control; (iii) the Academy's actual damages and lost profits or statutory damages as allowed by the copyright laws and treble damages as allowed by the trademark laws; (iv) its costs; (v) its attorneys' fees;  and (vi) such other and further relief this Court may award.

## PARTIES

3.

The Academy is, and at all times herein mentioned was, a non-profit corporation organized and existing under the laws of the State of California, with its principal place of business in Los Angeles County, California.

4.

On information and belief, Defendant TEL is an Illinois corporation with its principal place of business in Edwardsville, Illinois.  According to its website, TEL is a "Tent, Party, Wedding & Event Rental" company with locations in Georgia, Missouri, and Illinois.  A true and correct copy of the homepage of TEL's website, reproduced on March 2, 2012, is attached as Exhibit 1 and is incorporated by reference as if set forth fully herein.

5.

TEL's "Atlanta Region" warehouse, at which unlawful replica statues are kept and rented from, is located at 420 W. Industrial Court, Villa Rica, Georgia 30180.

6.

Defendant Robert L. Hollingsworth ("Hollingsworth") is TEL's President and Corporate Administrator.  Upon information and belief, Hollingsworth is a

citizen of Illinois.  Upon information and belief, Hollingsworth supervises, and is primarily responsible for, TEL's marketing, sales, and rental operations, including the marketing, sales, rental, and use of the unlawful replica statues at TEL's Atlanta Region warehouse and elsewhere.  Hollingsworth continued his wrongful conduct even after the Academy notified Hollingsworth of these unlawful uses.

## JURISDICTION AND VENUE

### 7.

This action arises under the copyright laws of the United States, 17 U.S.C. §§ 101, *et seq.*; the trademark laws of the United States, 15 U.S.C. §§ 1051 *et seq.*; and the common law and statutes of the State of Georgia.  The Court has jurisdiction over the subject matter of these claims pursuant to 28 U.S.C. §§ 1331, 1338, and 1367, and 15 U.S.C. § 1121.  The Court has personal jurisdiction over Defendants, who do business in Georgia and operate a major warehouse in Villa Rica, Georgia, from which Defendants rent unlawful replicas of the Academy's "©Oscar®" statue.  Venue lies in this district pursuant to 28 U.S.C. §§ 1391(b) and 1400(a).  A substantial amount of the wrongful conduct occurred in this district.  Defendant has caused harm in this district and continues to cause harm in this district.

## FACTS

### The "©Oscar®" Trademarks and Copyright

8.

The Academy has registered the "©Oscar®" statuette with the United States Copyright Office.  A true and correct copy of the Certificate of Registration, No. G 38512, is attached as Exhibit 2 and is incorporated by reference as if set forth fully herein.  The Academy renewed the registration of its copyright in the "©Oscar®" statuette.  A true and correct copy of the Certificate of Registration of a Claim to a Renewal of Copyright, No. R 443432, is attached as Exhibit 3 and is incorporated by reference as if set forth fully herein.  The Academy's copyright is valid and subsisting.

9.

The copies of the "©Oscar®" statue given to "©Oscar®" winners are given subject to certain restrictions, including the prohibition against the sale, transfer, or copying of the statue.  The Academy has never distributed, nor offered to distribute, copies of the "©Oscar®" statue to the public.

10.

The Academy has also registered a two-dimensional depiction of the "Oscar®" as both a trademark and service mark with the United States Patent and

Trademark Office (the "USPTO").  True and correct copies of the Certificates of Registration Nos. 1,028,635, 1,895,980, and 1,960,182 are attached as Exhibits 4-6, respectively, and are incorporated by reference as if set forth fully herein.  The "Oscar®" design mark is valid, subsisting, and incontestable.

11.

Further, the Academy has registered the mark OSCAR as both a trademark and a service mark with the USPTO.  True and correct copies of Certificate of Registration Nos. 1,096,990, 1,118,751, 1,996,585, and 2,021,582 are attached as Exhibits 7-10, respectively, and are incorporated by reference as if set forth fully herein.  Still further, the Academy has registered the mark OSCARS as a service mark with the USPTO.  A true and correct copy of Certificate of Registration No. 1,528,890 is attached as Exhibit 11 and is incorporated by reference as if set forth fully herein.  The "OSCAR®" and "OSCARS®" word marks are valid, subsisting, and incontestable.

12.

The "©Oscars®" have come to symbolize the most outstanding achievements in motion picture-making.  Further, through its annual televised Academy Awards® awards ceremony, which is viewed in over 200 countries and territories, the "OSCAR®" word mark and "©OSCAR®" statuette design mark

6

have become extraordinarily famous and are recognized as among the most famous

marks in the world.  Indeed, a USPTO instructional videotape shows the

"©OSCAR®" in explaining what it means for a mark to be famous.

13.

To protect its extraordinarily valuable marks, the Academy permits the

above mentioned marks and copyright to be used in advertising only for carefully

limited and controlled purposes—such as to advertise motion pictures that have

won a best picture "©Oscar®"—and does not permit or license any manufacture,

reproduction, distribution, sale, rental, or use of such marks by manufacturers,

distributors, retailers, or businesses such as TEL.

**TEL's Infringing Statues**

14.

TEL, upon information and belief, is one of the largest "Tent, Party,

Wedding & Event Rental" companies in the nation.   According to TEL's website,

over 1 million people rented equipment from TEL in 2011 alone.  *See* Exhibit 1.

15.

In or around March 2011, the Academy was advised that TEL, through its

website, had offered for sale and/or rental a purported "Giant 8-ft OSCAR" statue

that bore an identical, substantial, or strikingly similar likeness to the "©Oscar®"

7

statue.  The replica statue was listed under the "Hollywood Theme Décor" heading of TEL's website.

16.

The Academy never authorized or consented to TEL's marketing, sale, rental, or other use of any "©Oscar®" replica statue.

**The Academy's Demands that TEL Cease and Desist**

17.

Upon learning that TEL was offering bootleg "©Oscar®" statues for sale and/or rent through its website, the Academy sent a letter, dated March 7, 2011, to TEL, at its Atlanta address: TheEventLine.com, Inc., 161 Trinity Ave., SW, Atlanta, GA 30303.

18.

The March 7, 2011 letter informed TEL that use of the "©Oscar®" statue replicas violated copyright and trademark laws.  The Academy requested that TEL:

- advise the Academy whether it owned or possessed any "©Oscar®" statuette likenesses, or any statuette or depiction strikingly, substantially, or confusingly similar thereto, for sale or rental;

- provide written assurance that TEL would not use unauthorized "©Oscar®" statue replicas, or works or depictions substantially, or strikingly similar thereto, in any manner;

8

- deliver up to the Academy for destruction any and all copies of the "©Oscar®" statue likeness.

The letter further directed TEL's attention to the Ninth Circuit's decision in *Academy of Motion Picture Arts and Sciences v. Creative House Promotions, Inc.*, 944 F.2d 1446 (9th Cir. 1991). A true and correct copy of the Academy's March 7, 2011 letter, sent by U.S. Mail, is attached as Exhibit 12 and is incorporated by reference as if set forth fully herein.

19.

The Academy received no response to this March 7, 2011 letter.

20.

On August 5, 2011, the Academy sent another letter to TEL, at the same Atlanta address. The August 5, 2011 letter was substantially the same as the March 7, 2011 letter. A true and correct copy of the Academy's August 5, 2011 letter, sent by U.S. Mail, is attached as Exhibit 13 and is incorporated by reference as if set forth fully herein. Again, the Academy received no response.

**TEL Continues to Use Unauthorized Replica Statues**

21.

Sometime after the August 5, 2011 letter, TEL modified its website. Under the same "Hollywood Theme Décor" heading, instead of advertising a "Giant 8-ft

OSCAR" statue, TEL now advertised an "Awards statue."  TEL also added a new

disclaimer to its website stating that its statue "do[es] not depict the trademarked

©AMPAS statue."  Under the same category, TEL also offered for rent a 7-8 foot

tall "Awards Gold Statue" that was also strikingly, substantially and confusingly

similar to the "©OSCAR®" statuette.

### 22.

Notwithstanding the semantic changes to its website, TEL and its employees

have continued to refer to the unauthorized replica statues as "Oscars."

Additionally, TEL's invoices have referred to those statues as "OZCARS."  A true

and correct copy of one such invoice is attached as Exhibit 14, and is incorporated

by reference as if set forth fully herein.

### 23.

On February 11, 2012, an Academy investigator visited TEL's warehouse

located in Villa Rica, Georgia.  The Academy investigator observed two statues he

estimated to be approximately nine feet tall and took several photos of the statues.

True and correct copies of two of the investigator's photographs are attached as

Exhibit 15 and are incorporated by reference as if set forth fully herein.

24.

During the February 11, 2012 warehouse visit, TEL's warehouse manager, Mike Bagwell, stated that the fake statues "are Oscar statues, but technically, legally, we can't call 'em that because there is a slight difference in them," that "there are trademarks," and so "these are Hollywood statues, basically."  Mr. Bagwell also advised the Academy investigator that he could order lighted bases for the statue by asking a sales representative to have the "Oscar statues lighted."

25.

On February 23, 2012, the Academy wrote yet another letter to TEL and its President, Defendant Hollingsworth.  A true and correct copy of this letter is attached as Exhibit 16 and is incorporated by reference as if set forth fully herein. This letter reiterated that the rental of statues identical, or strikingly, substantially, or confusingly similar, to the Academy's "©Oscar®" statuettes is unauthorized— regardless of the name used by Defendants to market the statues.  The letter again asked TEL to cease all use of "©Oscar®" statues or depictions or works substantially or strikingly similar thereto.

26.

Notwithstanding their receipt of this letter, Defendants continue to advertise statues on the TEL website that are strikingly, substantially, or confusingly similar, to the Academy's "©Oscar®" statuettes.  Defendants now advertise these statues as "TELLY AWARDS©™" statues on the TEL website.  They are listed as "Awards Gold Statue[s]" and "Hollywood[] Awards Statue[s]" under the "Hollywood" and "Backdrop" categories of the TEL online catalog.  True and correct copies of pages from TEL's website advertising this statue are attached hereto as Exhibits 17 and 18 (selected pages from online catalog) and are incorporated by reference as if set forth fully herein.

27.

In an effort to make it appear as though they are not marketing unauthorized statues for sale or rent, Defendants recently modified the TEL website to offer TELLY statues for "free"—but only to customers who rent at least $1,000 in equipment.  *See* Ex. 17.  Further, the statues were purportedly repainted "from sunglow gold to sunglow orange."  These pledges were made in February 29 and March 2, 2012 emails from Hollingsworth to David Quinto, the attorney principally responsible for protecting the Academy's "©Oscar®" and "Academy Awards®" marks.  True and correct copies of these emails are attached as Exhibit

19 and are incorporated by reference as if set forth fully herein.  Hollingsworth has supervised, and has been responsible for, TEL's unlawful use of the TEL statues.

28.

Defendants' alterations to their bootleg statues do not change the fact that Defendants continue to market statues that are strikingly, substantially, or confusingly similar, to the Academy's "©Oscar®" statuettes—statues which TEL itself continues to identify as "Oscars."

29.

Defendants' conduct is nothing more than an attempt to trade on and profit from the Academy's extraordinarily valuable goodwill and reputation associated with the "OSCAR®" mark and "©Oscar®" statue.

30.

The Academy repeatedly has attempted to resolve this dispute amicably.  On at least seven occasions it has sent letters and/or emails to Defendants requesting that Defendants cease all use of "©Oscar®" statues or depictions or works substantially or strikingly similar thereto.  Defendants' persistent, unauthorized and unlawful use of the "OSCAR®" mark and the "©Oscar®" statue has forced the Academy to file this Complaint.

## COUNT I

### (Direct and Contributory Copyright Infringement—17 U.S.C. §§ 106, et seq.)

31.

The Academy repeats and realleges each and every allegation contained in paragraphs 1 through 30 above, as if fully set forth herein.

32.

Defendants have distributed, displayed, and/or used, and continue to distribute, display, and/or use various types of statues that are strikingly, substantially, or confusingly similar to the Academy's copyrighted "©Oscar®" statue.

33.

Defendants' manufacture, reproduction, distribution, display, sale, rental, or use of the statues is and has been without the consent or authorization of the Academy and for commercial purposes.  Accordingly, Defendants have infringed the Academy's copyright in its "©Oscar®" statue.

34.

Hollingsworth, the President of TEL and the Corporate Administrator/control person responsible for TEL's marketing, sales, and rental operations, has intentionally caused and materially contributed to TEL's infringing

14

conduct.  Hollingsworth has the ability to, and does, supervise TEL's infringing

conduct and has been responsible for causing TEL to continue to use "©Oscar®"

statues or depictions or works substantially or strikingly similar thereto, even after

the Academy has repeatedly demanded that TEL cease such use.

35.

The Academy has suffered serious injury as a result of the infringement of

its copyright, including harm to its goodwill and reputation in the marketplace.

36.

The Academy will continue to suffer serious injury if Defendants are not

enjoined from manufacturing, reproducing, distributing, displaying, selling,

renting, or otherwise using the statues that are substantially or strikingly similar to

the "©Oscar®" statue.  The Academy has no adequate remedy at law for

Defendants' acts of infringement. Therefore, the Academy is entitled to

preliminary and permanent injunctions enjoining Defendants' acts of infringement

and to an award of actual or statutory damages for Defendants' willful

infringement, lost profits, and costs and reasonable attorneys' fees.

## COUNT II

### (Direct and Contributory Trademark Infringement-15 U.S.C. §§ 1114(1), 1116(d) and 1117)

37.

The Academy repeats and realleges each and every allegation contained in paragraphs 1 through 36 above, as if fully set forth herein.

38.

The Academy has long used its "©Oscar®" design mark and "OSCAR®" word mark in interstate commerce in connection with the advertising and promotion of its annual "©Oscar®" awards ceremony and to recognize motion pictures honored by the Academy for excellence in one or more aspects.

39.

Because of the exclusive and extensive use and promotion of its marks, the Academy's marks have acquired considerable value and have become well-known to the consuming public and trade throughout the world as associated with the Academy and as the highest marks of excellence in movie-making.

40.

The Academy has not consented to, nor authorized, Defendants' marketing, distribution, sale, rental, or use of the "OSCAR®" word mark or any statue

identical to or strikingly, substantially, or confusingly similar to the "Oscar®" design mark.

41.

Defendants' imitation, copying, and unauthorized use of the Academy's registered marks constitutes trademark infringement and causes: (a) likelihood of confusion, deception, and mistake among the consuming public and trade as to the source of TEL's products and (b) serious, irreparable injury to the Academy, including injury to its reputation and dilution of the distinctive high quality of its marks, for which the Academy has no adequate remedy at law.

42.

Hollingsworth knowingly caused TEL to infringe the Academy's trademarks.  Specifically, Hollingsworth has had the ability to, and does, supervise the infringing conduct, and has caused TEL to continue to distribute, sell, rent, and/or use the "OSCAR®" word mark and statues identical to, or strikingly or substantially similar to the "Oscar®" design mark.

43.

The Academy is entitled to preliminary and permanent injunctions enjoining Defendants' acts of infringement and to an award of actual or statutory damages, three times Defendants' profits based on Defendants' willful infringement of the

17

"Oscar®" design mark and "OSCAR®" word mark, costs and reasonable attorneys' fees, and all additional relief authorized under the Lanham Act.

## COUNT III

## (Direct and Contributory False Representation—15 U.S.C. § 1125(a))

44.

The Academy incorporates herein by reference each and every allegation contained in paragraphs 1 through 43 above, as if fully set forth herein.

45.

Defendants, by renting, selling, marketing, and/or using "©Oscar®" replica statues and/or using the "OSCAR®" word mark, have impliedly misrepresented to the public that TEL's statues are approved, sponsored, or licensed by the Academy.

46.

Hollingsworth knowingly contributed to these misrepresentations by causing TEL to sell, rent, market, and/or use "©Oscar®" statues or depictions or works substantially or strikingly similar thereto, and to use the "OSCAR®" word mark. Hollingsworth has the full ability to, and does, in fact, supervise and control these unlawful activities.

47.

Defendants' aforesaid acts constitute a false representation that Defendants' sale, rental and/or use of the replica statues is authorized by or emanates from the Academy.  Defendants' material misrepresentations may cause the general public to mistakenly believe that TEL's replica statues are authorized by or emanate from the Academy.  Such misrepresentations harm the Academy's reputation and its ability to protect the integrity and image of its name and symbol of excellence.

48.

 Defendants' acts constitute false representations and are violations of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

49.

Defendants' acts have irreparably damaged, and will continue to damage, the Academy.  The Academy has no adequate remedy at law for these wrongs and injuries.  The damage to the Academy includes harm to its goodwill and reputation in the marketplace that money damages cannot compensate.  The Academy is therefore entitled to an injunction enjoining Defendants' acts of false representation, an award of actual or statutory damages, three times Defendants' profits based on Defendants' willful misrepresentation, costs and reasonable attorneys' fees, and all additional relief authorized under the Lanham Act.

## COUNT IV

## (Direct and Contributory Dilution—15.U.S.C. § 1125(c))

50.

The Academy incorporates herein by reference each and every allegation contained in paragraphs 1 through 49 above, as if fully set forth herein.

51.

The Academy's "OSCAR®" word mark and "©OSCAR®" design mark are among the most famous design marks in the United States and the world. TEL's sale, marketing, distribution, rental, or use of statues that are substantially or strikingly similar to the Academy's world famous "©Oscar®" design mark and use of the world famous "OSCAR®" word mark tarnishes and dilutes, and will continue to tarnish and dilute, the distinctive quality of the Academy's marks in violation of Section 43(c) of the Lanham Act, 15 U .S.C. § 1125(c).

52.

Hollingsworth knowingly encouraged this dilution by supervising, controlling, and causing the selling, marketing, distribution, rental, or use of statues substantially or strikingly similar to the Academy's world famous "©Oscar®" design mark and use of the world famous "OSCAR®" word mark.

53.

Defendants' acts have irreparably damaged, and will continue to damage, the Academy.  The Academy has no adequate remedy at law for these wrongs and injuries.  The damage to the Academy includes harm to its goodwill and reputation that money damages cannot compensate.  The Academy is therefore entitled to an injunction enjoining Defendants' acts of dilution and to an award of actual or statutory damages, three times Defendants' profits based on Defendants' willful dilution, costs and reasonable attorneys' fees, and all additional relief authorized under the Lanham Act.

## **COUNT V**

### **(Unfair Competition—O.C.G.A. § 23-2-55)**

54.

The Academy incorporates herein by reference each and every allegation contained in paragraphs 1 through 53 above, as if fully set forth herein.

55.

The Academy has long used its "Oscar®" design mark and "OSCAR®" word mark in interstate commerce in connection with the advertising and promotion of its annual "©Oscar®" awards ceremony and to recognize motion pictures honored by the Academy for excellence in one or more aspects.

21

56.

As a result of the exclusive and extensive use and promotion of its

marks, the Academy's marks have acquired considerable value and have become

well-known worldwide as associated with the Academy and as the highest marks

of excellence in movie making.

57.

The Academy has not consented to, nor authorized, Defendants' marketing,

sale, distribution, rental, or use of the "OSCAR®" word mark or any statue

identical to or strikingly or substantially similar to the "Oscar®" design mark.

58.

Defendants' conduct constitutes an attempt to encroach upon the Academy's

business by the use of the Academy's registered marks with the intention of

misleading the public, which violates O.C.G.A. § 23-2-55.

59.

Hollingsworth knowingly and actively caused TEL to encroach upon the

Academy's rights by supervising, controlling, and participating in the use of the

Academy's registered marks with the intention of misleading the public.

60.

Defendants' conduct has caused serious, irreparable damage to the Academy, including injury to its reputation and dilution of the distinctive high quality of its marks, for which the Academy has no adequate remedy at law. The Academy is entitled to preliminary and permanent injunctions enjoining Defendants' acts of unfair competition, to recover damages in an amount to be determined by the trier of fact, attorneys' fees, and all additional relief authorized under state law.

## COUNT VI

### (Direct and Contributory Violation of Georgia Deceptive Trade Practices Act—O.C.G.A. § 10-1-372)

61.

The Academy incorporates herein by reference each and every allegation contained in paragraphs 1 through 60 above, as if fully set forth herein.

62.

 Defendants' sale, marketing, distribution, rental, and/or use of statues that are substantially or strikingly similar to the Academy's federally registered "Oscar®" design mark and use of the "OSCAR®" word mark have caused and will continue to cause a likelihood of confusion or misunderstanding regarding both the

source, sponsorship, approval, or certification of TEL's business and TEL's

affiliation, connection, or association with, or certification by, the Academy.

63.

Defendants' use of the Academy's marks violates the Georgia Deceptive

Trade Practices Act ("GDTPA"), O.C.G.A. § 10-1-372.

64.

Hollingsworth knowingly caused TEL to violate the GDTPA.

Hollingsworth has had the ability to supervise, control, and has actively

participated in, the unauthorized use of the Academy's federally registered

"Oscar®" design mark and "OSCAR®" word mark.

65.

Defendants' acts complained of herein have irreparably damaged, and will

continue to damage, the Academy.  The Academy has no adequate remedy at law

for these wrongs and injuries.  The damage to the Academy includes harm to its

goodwill and reputation that money damages cannot compensate.  The Academy is

therefore entitled to an injunction enjoining the Defendants' deceptive trade

practices, attorneys' fees, and all additional relief authorized under state law.

## COUNT VII

## (Direct and Contributory Violation of Georgia Fair Business Practices Act— O.C.G.A. § 10-1-393 and 399(c) and (d))

66.

The Academy repeats and realleges each and every allegation contained in paragraphs 1 through 65 above, as if fully set forth herein.

67.

Defendants' sale, marketing, distribution, rental, or use of statues that are substantially or strikingly similar to the Academy's federally registered "Oscar®" design mark and use of the "OSCAR®" word mark have caused and will continue to cause a likelihood of confusion or misunderstanding regarding both the source, sponsorship, approval, or certification of TEL's business and TEL's affiliation, connection, or association with, or certification by, the Academy.

68.

Defendants' use of the Academy's marks violates the Georgia Fair Business Practices Act ("GFBPA"), O.C.G.A. § 10-1-393.

69.

Hollingsworth knowingly caused TEL to violate the GFBPA. Hollingsworth has had the ability to supervise, control, and has actively participated in, the

unauthorized use of the Academy's federally registered "Oscar®" design mark and "OSCAR®" word mark.

70.

Defendants' acts have irreparably damaged, and will continue to damage, the Academy. The Academy is entitled to preliminary and permanent injunctions enjoining Defendants' acts of infringement and to an award of three times the Academy's actual damages, based on Defendants' intentional acts, costs and reasonable attorneys' fees, and all additional relief authorized under state law.

**COUNT VIII**

**(Direct and Contributory Common Law Trademark Infringement)**

71.

The Academy repeats and realleges each and every allegation contained in paragraphs 1 through 70 above, as if fully set forth herein.

72.

The Academy has long used its "Oscar®" design mark and "OSCAR®" word mark in interstate commerce in connection with the advertising and promotion of its annual "©Oscar®" awards ceremony and to recognize motion pictures honored by the Academy for excellence in one or more aspects.

73.

As a result of the exclusive and extensive use and promotion of its marks, the Academy's marks have acquired considerable value and have become well-known to the consuming public and trade throughout the world as associated with the Academy and as the highest marks of excellence in movie-making.

74.

The Academy has not consented to, nor authorized, Defendants' selling, marketing, distribution, rental, or use of the "OSCAR®" word mark or any statue identical to or strikingly or substantially similar to the "Oscar®" design mark.

75.

Defendants' imitation, copying, and unauthorized use of the Academy's registered marks constitutes trademark infringement and causes: (a) likelihood of confusion, deception, and mistake among the consuming public and trade as to the source of TEL's products and (b) serious, irreparable injury to the Academy, including injury to its reputation and dilution of the distinctive high quality of its marks, for which the Academy has no adequate remedy at law.

76.

Hollingsworth knowingly caused TEL to infringe the Academy's trademarks.  Hollingsworth has the ability to, and does, supervise and control the

infringing conduct, and has caused TEL to continue to sell, distribute, rent, and/or use the "OSCAR®" word mark or any statue identical to or strikingly or substantially similar to the "Oscar®" design mark without authorization.

77.

The Academy is entitled to preliminary and permanent injunctions enjoining Defendants' acts of infringement, to recover damages in an amount to be determined by the trier of fact, and all additional relief authorized under the common law.

## COUNT IX

### (Direct and Contributory Common Law Unfair Competition)

78.

The Academy incorporates herein by reference each and every allegation contained in paragraphs 1 through 77 above, as if fully set forth herein.

79.

Defendants' selling, marketing, distribution, display, or rental of statues substantially or strikingly similar to the "©Oscar®" statue, or use of the "OSCAR®" word mark, as more fully set forth above, constitutes an unlawful use and appropriation of the Academy's proprietary rights and has the potential to cause confusion in the marketplace.

80.

Defendants' reproduction, sale, manufacture, marketing, distribution, display, or rental of statues that are substantially or strikingly similar to the "©Oscar®" statue, or use of the "OSCAR®" word mark, creates the false impression that TEL's unauthorized replica statues are approved, licensed, or sponsored by the Academy.  This constitutes an unjust use and misappropriation of, or injury to, the goodwill or business reputation of the Academy and will subject the Academy's goodwill and business reputation to the hazards and perils of Defendants' business activities, over which the Academy has no control.

81.

Hollingsworth knowingly controlled, supervised and participated in the unlawful reproduction, manufacture, marketing, distribution, display, or rental of the TEL statues.

82.

Defendants' acts complained of herein have irreparably damaged, and will continue to damage, the Academy.  The Academy has no adequate remedy at law for these wrongs and injuries.  The damage to the Academy includes harm to its goodwill and reputation in the marketplace that money damages cannot compensate.

83.

Moreover, Defendants' acted with specific intent to cause harm to the Academy, and Defendants actions were intentional and demonstrate willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of a conscious indifference to consequences, for which the Academy seeks punitive damages pursuant to O.C.G.A. § 51-12-5.1.

84.

The Academy is entitled to an injunction enjoining Defendants' acts of unfair competition, to recover damages in an amount to be determined by the trier of fact, including punitive damages, and all additional relief authorized under the common law.

## PRAYER FOR RELIEF

WHEREFORE, the Academy demands judgment:

1.    That Defendants have infringed the Academy's Copyright in violation of the Copyright Act of 1976, 17 U.S.C. §§ 106, *et seq*.; that Defendants have infringed the Academy's marks in violation of Section 32 of the Lanham Act, 15 U .S.C. §§ 1114(1); that Defendants have engaged in false representation in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); that Defendants have engaged

in trademark dilution in violation of § 43(c) of the Lanham Act, 15

U.S.C. § 1125(c); that Defendants have engaged in unfair competition

in violation of O.C.G.A . § 23-2-55; that Defendants have violated the

Georgia Deceptive Trade Practices Act, O.C.G.A. § 10-1-372; that

Defendants have violated of the Georgia Fair Business Practices Act;

and that Defendants have engaged in trademark infringement and

unfair competition in violation of the common law of the State of

Georgia.

2.     That Defendants, as well as all persons acting under the direction,

control, permission, or authority of Defendants, and all persons acting

in concert therewith, be enjoined during the pendency of this action,

and permanently thereafter, from reproducing, manufacturing,

displaying, marketing, distributing, advertising, transferring, renting,

or selling any facsimile, copy, replica, reproduction, picture or

depiction of the "Oscar" statue or otherwise infringing the Academy's

copyright in the "©Oscar" statue.

3.     That Defendants be preliminarily and permanently enjoined from

using the "Oscar®" design mark or "OSCAR®" word mark in any

manner and from reproducing, displaying, manufacturing, marketing,

31

selling, distributing, renting, or advertising any trophy, statue or statue display confusingly similar to "©Oscar®," whether in two- or three-dimensional form, and that all signs, prints, packages, wrappers, literature, website listings, and advertisements in the possession of Defendants bearing any reproduction, counterfeit, copy or colorable imitation of "©Oscar®," whether in two- or three-dimensional form, or the "OSCAR®" mark, and all devices, plates, molds, matrices, and other means of making the same, be delivered up and destroyed pursuant to 15 U.S.C. §§ 1114, 1118 and 1125.

4.   That all facsimiles, displays, copies, replicas, reproductions, pictures, and depictions of the "©Oscar®" statue or items containing the "OSCAR®" mark in Defendants' possession, custody, or control, and all pre-fabricated displays or kits, molds, matrices, or other devices used for assembling, manufacturing, or reproducing the aforesaid items, be ordered delivered up for destruction or seized and forfeited to the United States.

5.   That all records of customers and sales related to Defendants' infringing products be delivered up to the Academy.

6.     That Defendants pay to the Academy the full costs of this action and its reasonable attorneys' fees pursuant to 17 U.S .C. § 505 and 15 U.S.C. § 1117.

7.     That the Academy recover its actual damages and lost profits or, in the alternative, that the Academy recover statutory damages of $150,000, for Defendants' willful infringement pursuant to 17 U.S.C. § 504.

8.     That the Academy recover three times Defendants' profits and the Academy's damages, reasonable attorneys' fees, prejudgment interest and the costs of this action pursuant to 15 U.S.C. §§ 1114 and 1117.

9.     That the Academy recover three times its actual damages for Defendants' intentional unfair business practices and unfair competition, punitive damages, reasonable attorneys' fees, the costs of bringing this action, and prejudgment interest pursuant to O.C.G.A. § 10-1-399(c) and (d), § 51-12-5.1, and state law.

10.    That the Academy have such other and further relief as the Court deems just and proper.

## DEMAND FOR A JURY TRIAL

The Academy hereby demands a trial by jury on all issues in this action that are so triable as a matter of right and law.

Respectfully submitted, this 9th day of March, 2012.

|  |  |
|---|---|
|  | /s/ Jeffrey D. Horst |
|  | Jeffrey D. Horst |
| Krevolin & Horst, LLC | Georgia Bar No. 367834 |
| One Atlantic Center | Horst@khlawfirm.com |
| 1201 West Peachtree St., N.W. | David A. Sirna |
| Suite 3250 | Georgia Bar No. 613513 |
| Atlanta, Georgia 30309 | Sirna@khlawfirm.com |
| (404) 888-9700 | Christopher E. Adams |
| (404) 888-9577 (facsimile) | Georgia Bar No. 789600 |
|  | Adams@khlawfirm.com |
|  | *Attorneys for Plaintiff Academy Of Motion Picture Arts And Sciences* |